1  SHANA LAZEROW (SBN 195491)
   *Email: SLazerow@cbecal.org*
2  ADRIENNE L. BLOCH (SBN 215471)
   *Email: ABloch@cbecal.org*
3  COMMUNITIES FOR A BETTER ENVIRONMENT
   1440 Broadway, Suite 701
4  Oakland, California 94612
   Tel: (510) 302-0430
5  Fax: (510) 302-0438

6  Attorneys for Plaintiff
   COMMUNITIES FOR A BETTER ENVIRONMENT

7
   CHRISTOPHER J. CARR (SBN 184076)
8  *Email: CCarr@mofo.com*
   SHAYE DIVELEY (SBN 215602)
9  *Email:  SDiveley@mofo.com*
   MORRISON & FOERSTER LLP
10 425 Market Street
   San Francisco, California  94105-2482
11 Telephone: 415.268.7000
   Facsimile: 415.268.7522

12
   Attorneys for Defendant
13 SYAR INDUSTRIES, INC.

14
                    UNITED STATES DISTRICT COURT
15
                   NORTHERN DISTRICT OF CALIFORNIA
16

17

| COMMUNITIES FOR A BETTER ENVIRONMENT, a California non-profit corporation,<br><br>                    Plaintiff,<br><br>         v.<br><br>SYAR INDUSTRIES, INC., a corporation,<br><br>                    Defendant. | Case No. C 07 01487 EDL<br><br>**[~~PROPOSED~~] CONSENT DECREE**<br><br>Judge:  Hon. Elizabeth D. LaPorte<br><br>(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq.) |
| --- | --- |

18
19
20
21
22
23
24
25
26
27
28

[PROPOSED] CONSENT DECREE – Case No. C 07-04187 EDL

1      WHEREAS, Communities for a Better Environment ("CBE") is a non-profit public

2  benefit corporation that works to protect and enhance the environment and public health

3  primarily in California's urban areas including San Francisco Bay;

4      WHEREAS, Syar Industries, Inc. ("Syar") is a corporation organized under the laws of

5  the State of California with its corporate headquarters located in Napa, California, which leases

6  the approximately 2-acre property located at Richmond, California (hereinafter "Facility");

7      WHEREAS, storm water discharges associated with industrial activity are regulated

8  pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit

9  No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 91-13-DWQ

10  (as amended by Water Quality Order 92-12 DWQ and 97-03-DWQ), issued pursuant to Section

11  402 of the Federal Water Pollution Control Act, 33 U.S.C. §1342 (hereinafter "General

12  Permit");

13      WHEREAS, on August 22, 2006, CBE served Syar, the United States Environmental

14  Protection Agency, the California State Water Resources Control Board ("State Board"), the

15  Bay Area Regional Water Quality Control Board ("Regional Board"), the United States

16  Attorney General and other individuals and entities with a notice of intent to file suit ("60-Day

17  Notice") under Federal Water Pollution Control Act ("Clean Water Act" or "the Act") sections

18  505(a)(1) and (f), 33 U.S.C. § 1365(b)(1)(A), alleging violations of the Act and the General

19  Permit at the Facility;

20      WHEREAS, CBE filed a complaint ("Complaint") against Syar in the United States

21  District Court, Northern District Court of California on March 14, 2007;

22      WHEREAS, CBE contends in its 60-Day Notice and Complaint that Syar has repeatedly

23  discharged polluted storm water in violation of the Clean Water Act and discharged pollutants

24  without NPDES permit authorization.  Syar denies all allegations in the 60-Day Notice and

25  Complaint;

26      WHEREAS, this Consent Decree shall be submitted to the United States Department of

27  Justice for the statutory review period pursuant to 33 U.S.C. §1365(c) and shall thereafter be

28  submitted for approval by the Court;

[PROPOSED] CONSENT DECREE – Case No. C 07-04187 EDL

1    WHEREAS, all actions taken by Syar pursuant to this Consent Decree shall comply

2    with all applicable federal, state, and local rules and regulations; and

3    WHEREAS, the Parties agree that it is in their mutual interest to resolve this matter

4    without further litigation;

5    IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND ORDERED AND

6    DECREED BY THE COURT, AS FOLLOWS:

7    **I.      COMMITMENT OF DEFENDANT**

8    1.      To reduce or prevent pollutants associated with industrial activity in storm water and

9    authorized non-storm water and to eliminate alleged unauthorized non-storm water discharges

10   from the Facility into the waters of the United States, Syar shall implement appropriate

11   structural and non-structural Best Management Practices ("BMPs") as required by the General

12   Permit and as described more fully below.

13   2.      Designated Discharge Points and Sampling: Within thirty (30) days of the date on which

14   each Party signs this Agreement ("Effective Date"), to the extent not already implemented, Syar

15   shall identify in its Storm Water Pollution Prevention Plan ("SWPPP") for the Facility every

16   point at which storm water is discharged from the Facility.  Specifically, Syar shall verify the

17   hydraulic continuity of runoff from the northern portions of the facility with the storm drain

18   system Syar currently monitors and verify that the monitoring point is representative of runoff

19   from the facility.  To the extent not already implemented, each Designated Discharge Point

20   shall be numbered and clearly labeled on the Site Map set forth in the SWPPP.  Within thirty

21   (30) days of the Effective Date, Syar shall update the Facility SWPPP to fully describe the

22   protocol for taking storm water samples.  The description shall be precise with respect to

23   exactly where and when the samples are to be collected.

24   **II.     POLLUTION CONTROL MEASURES**

25   3.      Pollutant Generating Activities:  Within thirty (30) days of the Effective Date, Syar shall

26   update the Facility's SWPPP to fully describe all activities that generate or potentially generate

27   pollutants within the Facility's boundaries that might be transported off the Facility via storm

28   water runoff and identify the corresponding locations where storm water runoff from these

[PROPOSED] CONSENT DECREE – Case No. C 07-04187 EDL

2

1  areas would be discharged and the identity of the pollutants involved.  Syar shall further denote

2  the areas where pollutants are generated or potentially generated on the Facility's Site Map.

3  4.       Best Management Practices:  In accordance with this Consent Decree, to seek to meet

4  the levels specified in Exhibit 1, Syar shall implement the following BMPs:

5  a.       Storm Drain Inlet/Catch Basin Inspection: Syar shall cover drop inlets throughout the

6  Facility during the Dry Season (June 1 to September 30).

7  b.       Syar shall install structural BMPs to prevent direct runoff into vulnerable drop inlets

8  (drop inlets located immediately adjacent to or below material handling areas such as conveyer

9  belts or loading areas).

10  c.       After the Effective Date and prior to October 1, 2008 and October 1, 2009, or otherwise

11  within seven (7) days of the first forecasted storm event of the rainy season (October 1 to May

12  31) ("Wet Season"), Syar shall inspect all storm drain inlets at the Facility.  During this

13  inspection, Syar shall clean as needed each drain inlet using a vacuum or other effective

14  cleaning device/method to remove dusts and solids that have entered the storm drain inlets.

15  d.       Syar shall inspect and take all necessary action to ensure efficacy of the BMPs at storm

16  drain inlets at the Facility during the Wet Season at least weekly, after each storm, and on the

17  day of or prior to any forecasted storm event that may result in discharge from the Facility.

18  e.       Site Sweeping and Cleaning:  (i) Syar shall perform regenerative sweeping at least twice

19  per month and daily sweeping as needed during the Wet Season.  Sweeping and cleaning shall

20  be designed to minimize tracking and other dispersal of pollutants on paved areas of the

21  Facility, (ii) at least annually, Syar shall conduct a thorough inspection of the Facility and to the

22  extent warranted by this inspection perform additional comprehensive site cleaning (such as a

23  power wash), (iii) Syar shall not discharge any waste fluids or solid wastes generated in site

24  cleaning to storm drain inlets or waterways, and (iv) Syar shall collect and dispose of all wastes

25  generated during Facility cleaning and sweeping in a manner that complies with all local, state,

26  and federal laws.

27  f.       Site Sweeping and Cleaning Log:  After the Effective Date, Syar shall keep a Site

28  Sweeping and Cleaning Log documenting the sweeping and any other site cleaning activity

1    performed at the Facility.  Syar shall make the sweeping and cleaning Log available for

2    inspection at any site inspection or otherwise with two (2) business days advance request by

3    CBE.  The Log will include the following information: Name, Date, Area Swept (i.e. entire site

4    or Garden Tract Road), Method (i.e. regen / manual).

5    g.        Tracking:  After the Effective Date, Syar shall implement appropriate additional BMPs

6    to reduce or prevent visible tracking of pollutants from the Facility by vehicle traffic to the

7    extent that the sweeping and cleaning actions specified in the preceding paragraph or other

8    actions required by this Consent Decree are insufficient to prevent such visible tracking.  Syar

9    shall sweep at least three hundred (300) feet of Garden Tract Road immediately adjacent to the

10    entrance and exit of the Facility.

11    h.        Hazardous Waste Materials Segregation and Handling:  After the Effective Date, Syar

12    shall implement a system:  (1) for identifying any toxic and hazardous materials handled at the

13    Facility and (2) for segregating such identified materials from other materials at the Facility and

14    storing all such materials under cover and on an impermeable surface, out of potential contact

15    with flooding associated with storm water.  Syar shall continue to maintain onsite in the same

16    location as the SWPPP its Hazardous Materials Business Plan for the Facility, which includes

17    the Material Safety Data Sheets for all the potentially toxic or harmful materials handled, used,

18    or stored at the Facility.

19    i.        Abandoned or Unused Equipment Storage: Within sixty (60) days of the Effective Date,

20    Syar shall ensure that all abandoned or broken equipment, scrap metals, or other equipment no

21    longer in use that have the potential to serve as the source for pollutant loading are either

22    removed from the Facility or are stored under cover, away from rainfall or storm water runoff.

23    j.        Vehicle and Equipment Management:  Within thirty (30) days of the Effective Date,

24    Syar shall implement BMPs to reduce or minimize pollutant release from any equipment or

25    motor vehicles that are parked or stored in areas of the Facility from which storm water

26    discharges.  Such BMPs shall include placing drip pans under stored or parked equipment,

27    weekly inspections for evidence of leaks from such equipment, and promptly (as soon as

28    reasonably possible and in no case later than in advance of forecasted rainfall events) cleaning

[PROPOSED] CONSENT DECREE – Case No. C 07-04187 EDL

4

1    up of spills, drips, or leaks from such equipment.  Any spilled substances and absorbent

2    materials used in cleaning up spills shall be disposed of in accordance with all local, state, and

3    federal laws and regulations.

4    k.        Vehicle and Equipment Maintenance:  After the Effective Date, to the extent not already

5    implemented, Syar shall not conduct non-emergency vehicle or movable equipment

6    maintenance or repair in outdoor, uncovered areas from which storm water discharges from the

7    Facility during rainfall events.  Whenever Syar conducts maintenance or repair activities in

8    non-covered areas from which storm water discharges from the Facility, Syar shall inspect the

9    area where the maintenance or repair occurred and shall clean up waste products, including

10   pollutant containing fluids, deposited or spilled on the ground as a result of the maintenance or

11   repair.  For purposes of this paragraph, rainfall events shall not include precipitation slight

12   enough not to produce storm water runoff at the Facility.

13   l.        Maintenance of BMP Structural Controls:  After the Effective Date, Syar shall maintain

14   structural BMPs at the site in good operating condition during the Wet Season (October 1 to

15   May 31) and shall promptly repair any damaged or degraded structural BMPs.

16   m.        Fueling Activities:  After the Effective Date, except in unusual and unexpected

17   circumstances where equipment located on-site has run out of fuel, Syar shall only conduct

18   fueling activities on the Facility within covered and bermed areas of the Facility.  In the event

19   of any fuel spills, Syar shall immediately remove and dispose of any fuel spills in accordance

20   with all applicable local, state, and federal laws and regulations.

21   n.        Training:  After the Effective Date, and annually thereafter, and within thirty (30) days

22   of hiring of new employees, Syar shall conduct training for all appropriate employees to explain

23   the requirements of this Consent Decree, the Facility SWPPP, and the General Permit to the

24   extent applicable to such employee.  Training shall focus on the employee's role in

25   implementing various Consent Decree measures including, for example, implementation of

26   BMPs, sweeping, or Facility inspections.  Training shall be conducted bilingually (i.e.,

27   Spanish/English or other pertinent language) to the extent that such employee is not reasonably

28

[PROPOSED] CONSENT DECREE – Case No. C 07-04187 EDL

1   able to comprehend training in English.  Syar shall integrate any new training requirements

2   resulting from this Consent Decree into the Facility's SWPPP.

3   5.      Amendment of SWPPP:  Within thirty (30) days of the Effective Date, Syar shall amend

4   the Facility's SWPPP to incorporate those BMPs set forth in this Consent Decree and to

5   incorporate any other requirements of the General Permit not already incorporated.  Syar shall

6   send a copy of such amended SWPPP to CBE within fourteen (14) days thereafter.  CBE shall

7   have thirty (30) days from receipt of the amended SWPPP to propose any changes to that

8   SWPPP.  Within thirty (30) days of notification by CBE of any proposed changes to the

9   SWPPP and of the reasons for such changes, Syar shall make all such changes to the amended

10  Facility SWPPP or shall explain in writing to CBE why Syar is declining to do so.  If the parties

11  are unable to agree on the provisions of the amended SWPPP, either party may seek resolution

12  through the Dispute Resolution process set forth in Paragraph 18.

13  6.      Amendment of Site Map:  Within thirty (30) days of the Effective Date, to the extent not

14  already included, Syar shall amend the Facility Site Map to include all components set forth in

15  the General Permit and this Consent Decree, and shall send a copy of the amended Site Map to

16  CBE within fourteen (14) days thereafter.  CBE shall have thirty (30) days from receipt of the

17  amended Site Map to propose any changes to that Site Map.  Within thirty (30) days of

18  notification by CBE of any additional changes to a Facility's Site Map and of the reasons for

19  such changes, Syar shall make all such changes to the amended Facility Site Map or shall

20  explain in writing to CBE why Syar is declining to do so.  If the parties are unable to agree on

21  all material provisions of the Site Map, either party may seek resolution through the Dispute

22  Resolution process set forth in Paragraph 18.

23  **III.     SAMPLING, MONITORING, INSPECTION & REPORTING**

24  7.      Sampling Program:  After the Effective Date, subject to the limitations set forth in

25  Paragraphs 7-9, Syar shall collect samples from each Designated Discharge Point at the Facility

26  according to the following sampling schedule:

27  a.      During the Wet Season for 2007-2008 ("First Year"), and except as set forth herein,

28  Syar shall collect five (5) storm water samples per year from each Designated Discharge Point

[PROPOSED] CONSENT DECREE – Case No. C 07-04187 EDL                                      6

1    at the Facility.  Syar shall test the samples for the constituents listed in Exhibit 1: Fe, Al, Cu,

2    Cd, Ni, Mn, TSS, pH, O&G, and EC.  If any constituent is found to be below Tier One levels

3    listed in Exhibit 1 in any three (3) consecutive sampling events, no further testing for that

4    constituent is required, provided it is not required by the General Permit.  Samples shall be

5    collected in compliance with the General Permit.  Additionally, in the event that Syar has not

6    collected five samples by February 1, Syar shall collect the sample at the start of the business

7    day, without regard to whether the sample is collected within the first hour of discharge,

8    provided that the sample is collected more than 24 hours after the last discharge ceased.

9    b.        During the Wet Season for 2008-2009 ("Second Year"), and except as set forth herein,

10   Syar shall collect and test three (3) storm water samples from each Designated Discharge Point

11   at the Facility.  Samples shall be collected in compliance with the General Permit.

12   Additionally, in the event that Syar has not collected three samples by February 1, Syar shall

13   collect the sample at the start of the business day, without regard to whether the sample is

14   collected within the first hour of discharge, provided that the sample is collected more than 24

15   hours after the last discharge ceased.

16   c.        During the Wet Season for 2009-2010 ("Third Year"), and except as set forth herein,

17   Syar shall collect and test three (3) storm water samples from each of the Designated Discharge

18   Points at the Facility.  Samples shall be collected in compliance with the General Permit.

19   Additionally, in the event that Syar has not collected three samples by February 1, Syar shall

20   collect the sample at the start of the business day, without regard to whether the sample is

21   collected within the first hour of discharge, provided that the sample is collected more than 24

22   hours after the last discharge ceased.

23   d.        Syar shall analyze each storm water sample collected for each of the parameters listed

24   on Exhibit 1.  Should operations materially change at the Facility, Syar shall conduct sampling

25   for any additional toxic priority pollutants listed in 40 C.F.R. § 131.38 likely to be present in

26   Syar's storm water discharges as a result of the changed operations.

27   e.        Where Syar discharges storm water into a storm drain inlet or catch basin, Syar may

28   choose to collect a sample below any insert or treatment system.  If Syar chooses not to collect

[PROPOSED] CONSENT DECREE – Case No. C 07-04187 EDL

7

1   a post-filtration or post-treatment sample, the chemical quality of storm water samples entering

2   a storm drain inlet or catch basin containing a fabric insert shall be considered the same as a

3   sample collected below the insert.

4   8.        During the Term of this Consent Decree, except as otherwise provided in Paragraph 7,

5   Syar shall collect all storm water samples in compliance with the General Permit.

6   9.        Syar shall have all storm water samples collected pursuant to this Consent Decree

7   delivered to a California state certified environmental laboratory for analysis within the time

8   needed for analysis within laboratory method allowable hold times.  The laboratory shall

9   thereafter conduct analysis sufficient to detect individual constituents at or below the Tier One

10   levels set forth in Exhibit 1.

11   10.        Syar shall provide complete results from Syar's sampling and analysis to CBE by July

12   31st of each year during the term of the Consent Decree, and shall provide a chart in digital or

13   hardcopy form that summarizes the results of all the samples and includes the levels listed in

14   Exhibit 1 for comparison in consistent units of measurement.

15   11.        Iterative Approach to Water Quality Protection:

16   a.        Action Plan; Additional Management/Treatment of Storm Water:  For any Wet Season

17   during the Term of this Consent Decree, if three or more sampling results for any particular

18   parameter over the course of the Wet Season at the Facility exceed the Tier Two levels as listed

19   in Exhibit 1 for that parameter, by July 31 following each Wet Season during the term of this

20   Consent Decree, Syar shall prepare and submit to CBE an action plan intended to meet the Tier

21   Two levels.  The Action Plan will state (a) which constituent exceeded which levels and (b) the

22   additional BMPs Syar intends to undertake to address the exceedence.  These BMPs may

23   include covering storm drain inlets during the wet season, subject to concerns about facility

24   flooding.  They should also include consideration of repair of any cracks in Facility pavement.

25   CBE shall have thirty (30) days from receipt to propose revisions to the Action Plan and explain

26   in writing the basis for any such revision.  Within forty-five (45) days of receiving CBE's

27   revised Action Plan, Syar shall either accept each such revision to the Action Plan or explain in

28   writing why it is rejecting any such revision.

[PROPOSED] CONSENT DECREE – Case No. C 07-04187 EDL

8

1    12.     Within thirty (30) days after the parties reach agreement or Dispute Resolution

2    proceedings conclude on the Action Plan, Syar shall amend its SWPPP to include all BMPs in

3    the Action Plan not otherwise implemented and included in the SWPPP.  Within thirty (30)

4    days thereafter pursuant to this paragraph, Syar shall provide the CBE with a copy of such

5    revised SWPPP.

6    13.     Site Access:  Syar shall provide CBE access to the Facility for annual inspection,

7    including SWPPP and Hazardous Materials Business Plan.  During the annual inspection, CBE

8    may also have access to portions of the Facility from which storm water discharges to inspect

9    compliance with the Consent Decree during operating hours with twenty-four (24) hours

10    advance notice, except that Syar shall have the right to deny access if circumstances would

11    make the inspection unduly burdensome and pose significant interference with business

12    operations.  In such case, Syar shall specify at least three (3) days within the next four (4)

13    weeks upon which CBE's inspection may proceed, with twenty-four (24) hours notice, during

14    normal business hours.  Syar shall not use the period of the CBE's advance notice pursuant to

15    this paragraph to make any alterations to Facility conditions that Syar would not otherwise have

16    made but for receiving advance notice of the CBE's requested site access such that CBE will be

17    allowed to inspect and sample normally representative Facility conditions and storm water

18    discharge.

19    14.     Facility Monitoring:  Within thirty (30) days after the Effective Date, weekly during the

20    Wet Season and just prior to forecasted storm events that may reasonably result in discharge

21    from the Facility, Syar shall inspect those portions of the Facility from which storm water

22    discharges on days that the Facility is operating.  All Designated Discharge Locations shall also

23    be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon

24    any standing water, and other materials associated with operations at the Facility.

25    15.     Reports:  Except as provided in Paragraphs 10 and 11, above, during the Term of this

26    Consent Decree, Syar shall provide CBE with a copy of all documents pertaining to the General

27    Permit submitted to the Regional Board or the State Board concerning the Facility, including all

28    documents and reports submitted to the Regional Board as required by the General Permit.

[PROPOSED] CONSENT DECREE – Case No. C 07-04187 EDL

1    Such documents and reports shall be transmitted to the CBE via U.S. Mail or electronic mail at

2    the time the documents are due to be submitted to the Regional or State Board.

3    **V.      MITIGATION, FEES, AND COSTS**

4    16.      Environmental Mitigation Funding:  As mitigation of the violations alleged in the

5    CBE's Notice and Complaint, Syar shall pay the sum of fifteen thousand ($15,000) to the Rose

6    Foundation for the Environment for projects that will benefit the environment of the San

7    Francisco Bay watershed.  Payment shall be made to the Rose Foundation for the Environment,

8    6008 College Avenue, Oakland, California  94618 within thirty (30) days of the Effective Date.

9    It is agreed that these monies will not be used for litigation of any sort, or direct advocacy

10   against Syar or its operations.

11   17.      Reimbursement of Fees and Costs:  Syar shall reimburse CBE in the amount of

12   $14,370.00 to help defray the CBE's reasonable investigation, expert, and attorneys' fees and

13   costs, and all other reasonable costs incurred as a result of investigating the activities at the

14   Facility related to this Consent Decree, bringing these matters to Syar's attention, and

15   negotiating a resolution of this action in the public interest.  These fees include the cost of an

16   expert from CBE to perform annual review.  Syar shall tender payment to the CBE Legal

17   Department within thirty (30) days of the Effective Date.

18   18.      Dispute Resolution:  If a dispute under this Consent Decree arises, or any Party believes

19   that a breach of this Consent Decree has occurred, the Parties shall schedule a meet and confer

20   within seven (7) days of receiving written notification from the other Party of a request for a

21   meeting to determine whether a violation has occurred and to develop a mutually agreed upon

22   plan, including implementation dates, to resolve the violation.  If the Parties fail to meet and

23   confer or the meet and confer does not resolve the issue, after at least seven (7) days have

24   passed after the meet and confer occurred or should have occurred, any Party shall be entitled to

25   all rights and remedies under the law, including bringing a motion before the United States

26   District Court for the Northern District of California, which shall retain jurisdiction over the

27   claims asserted in this action by CBE against Syar for the limited purpose of enforcement of the

28   terms of this Consent Decree.  The parties shall be entitled to seek fees and costs incurred in

[PROPOSED] CONSENT DECREE – Case No. C 07-04187 EDL

1   any such action, and such fees and costs shall be awarded pursuant to the provisions set forth in

2   Section 505(d) of the Clean Water Act, 33 U.S.C. §1365(d), and applicable case law

3   interpreting such provision.

4   **VI.      JURISDICTION**

5   19.      For the purposes of this Consent Decree, the Parties stipulate that the United States

6   District Court for the Northern District of California has jurisdiction over the Parties and

7   subject matter of this action.  The Parties stipulate that venue is appropriate in the Northern

8   District of California.  The Parties further stipulate for purposes of this Consent Decree that the

9   Complaint states a claim upon which relief may be granted against Syar pursuant to Section 505

10   of the Act, 33 U.S.C. §1365, and that CBE has standing to bring this action.

11   20.      The Court shall retain and have jurisdiction over the Parties to resolve disputes arising

12   under this Consent Decree and to enforce all terms and conditions of this Consent Decree until

13   their termination three (3) years from the Effective Date.

14   **VII.     WAIVER AND RELEASES**

15   21.      CBE Waiver and Release of Noticed Parties:  Upon the Effective Date, CBE, on its own

16   behalf and on behalf of its officers, directors, employees, and members, and each of their

17   successors and assigns covenants not to sue Syar, or their officers, directors, employees,

18   members, parents, subsidiaries, affiliates and each of their successors and assigns and their

19   agents and other representatives during the Term of this Consent Decree with respect to any

20   discharges of storm water from the Facility in alleged violation of the General Permit that arose

21   before or may arise during the Term of this Consent Decree.  In addition, Syar's performance of

22   all requirements of this Consent Decree shall constitute satisfaction in full of all of CBE's

23   claims set forth in its Complaint in this matter alleging Clean Water Act violations associated

24   with the discharge of storm water from the Facility.  CBE shall not request any further relief

25   against Syar beyond that set forth in this Consent Decree for any of their claims during the

26   Term of this Consent Decree.  All claims in CBE's Complaint against Syar shall be deemed

27   dismissed with prejudice at the end of the Term of this Consent Decree.

28

[PROPOSED] CONSENT DECREE – Case No. C 07-04187 EDL

11

1

2

3

4

5

6

7

8

22.      Syar Waiver and Release of CBE:  Syar, on its own behalf and on behalf of its officers, directors, employees, members, parents, subsidiaries, affiliates and each of their successors and assigns and their agents and other representatives, releases CBE and their officers, directors, employees, and members, and each of their successors and assigns and their agents, attorneys and other representatives from, and waives all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters associated with or related to this action.

9

10

11

12

13

14

15

23.      No Admission:  The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation.  Nothing in this Consent Decree shall be construed as, and Syar expressly does not intend to imply, any admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Decree constitute or be construed as an admission by Syar of any fact, finding, conclusion, issue of law, or violation of law.  However, this paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Consent Decree.

16

**VIII.    MISCELLANEOUS PROVISIONS**

17

18

19

24.      Effective Date:  The Effective Date of this Consent Decree shall be the date upon which all Parties have signed this Agreement.

20

21

25.      Term of Consent Decree:  The Consent Decree shall continue in effect for a period of three (3) years from the Effective Date, and it shall automatically terminate on that date.

22

23

26.      Execution in Counterparts:  The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

24

25

27.      Severability:  In the event that any of the provisions of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

26

27

28.      Construction:  The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to their plain and ordinary meaning.

28

[PROPOSED] CONSENT DECREE – Case No. C 07-04187 EDL

12

1   29.     Authority to Sign:  The undersigned are authorized to execute this Consent Decree on

2   behalf of their respective parties and have read, understood and agreed to all of the terms and

3   conditions of this Consent Decree.

4   30.     Integrated Consent Decree:  All agreements, covenants, representations and warranties,

5   express or implied, oral or written, of the Parties concerning the subject matter of this Consent

6   Decree are contained herein.

7   31.     Mailing of Documents to CBE:  Any notices or documents required or provided for by

8   this Consent Decree or related thereto that are to be provided to CBE pursuant to this Consent

9   Decree shall be hand delivered or sent by U.S. Mail, postage prepaid, and addressed as follows

10   or, alternatively, may be provided by electronic mail transmission to the e-mail address listed

11   below:

12   Adrienne Bloch/Legal Department
     Communities for a Better Environment
13   1440 Broadway Suite 701
     Oakland, CA 94612
14   Tel: (510) 302-0430
     Fax: (510) 302-0438
15   E-mail:  abloch@cbecal.org

16   Unless requested otherwise by Syar, any notices or documents required or provided for

17   by this Consent Decree or related thereto that are to be provided to Syar pursuant to this

18   Consent Decree shall be hand delivered or sent by U.S. Mail, postage prepaid, and addressed as

19   follows or, alternatively, may be provided by electronic mail transmission to the e-mail

20   addresses listed below:

21   Syar Industries, Inc.
     P.O. Box 2540
22   Napa, California  94558
     Attention: Michael D. Corrigan
23   Direct Line: (707) 259-5716
     Fax: (707) 265-0584
24   mcorrigan@syar.com

25   With copies sent to:

26   Christopher J. Carr
     Morrison & Foerster LLP
27   425 Market Street
     San Francisco, CA  94105-2482
28   Direct line: (415) 268-7246

[PROPOSED] CONSENT DECREE – Case No. C 07-04187 EDL

13

Fax: (415) 268-7522
CCarr@mofo.com

32.     Facsimile Signatures:  The Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

33.     Impossibility of Performance:  No Party shall be considered to be in default in the performance of any of their obligations under this Consent Decree when performance becomes impossible, despite the timely good faith efforts of the Party, due to circumstances beyond the Party's control, including without limitation any act of God, war, fire, earthquake, flood, and restraint by court order or public authority.  "Circumstances beyond the Party's control" shall not include normal inclement weather (defined as anything less than or equal to a 50-year/24 hour storm event), economic hardship or inability to pay.  Any Party seeking to rely upon this paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the impossibility of performance.

34.     If for any reason the Department of Justice or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Department of Justice or the Court.  If the Parties are unable to modify this Consent Decree in a mutually acceptable manner, this Consent Decree shall immediately be null and void.

//

//

//

//

35.     The settling Parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the Court for their approval and entry as a final judgment.

**COMMUNITIES FOR A BETTER ENVIRONMENT**

_____     Date: _____, 2007
     by:  William Gallegos

[PROPOSED] CONSENT DECREE – Case No. C 07-04187 EDL

14

1

2  Approved as to form:

3  _____

    Adrienne Bloch[1]

4

5  **SYAR INDUSTRIES, INC.**

6  _____    Date: _____, 2007

7     by:  Ralston P. Roberts

8  Approved as to form:

9  _____

10    Christopher J. Carr

11

12  **APPROVED AND SO ORDERED, this 20 day of December, 2007.**

13

14  UNITED STATES DISTRICT MAGISTRATE JUDGE

15

16  by: _____

       Honorable ... Laporte

17

18

19

20

21

22

23

24

25

26  [1] As the filing attorney, I, Adrienne Bloch, attest that all counsel find the content of this
    document acceptable and have given me permission to file electronically Proposed Consent
27  Decree on their behalf.

28

[PROPOSED] CONSENT DECREE – Case No. C 07-04187 EDL          15

**EXHIBIT 1**

| Constituent | Tier One | Tier Two |
|---|---|---|
| **Aluminum** | 0.087 mg/l | 0.750 mg/l |
| **Cadmium** | 0.0093 mg/l | 0.0159 mg/l |
| **Copper** | 0.0031 mg/l | 0.0636 mg/l |
| **Iron** | 1.0 mg/l | 1.0 mg/l |
| **Manganese** | 0.5 mg/1 | 1.0 mg/L |
| **Nickel** | 0.0082 mg/1 | 1.417 mg/1 |
| **Total Suspended Solids** | 25 mg/l | 100 mg/l |
| **TOC*** | | |
| **SC*** | | |
| **pH** | 6.5 to 8.5 | 6.0-9.0 |

\* Although Tier One or Tier Two levels are not indicated for these constituents, Syar agrees to analyze stormwater samples for each of these constituents throughout the life of the Consent Decree.

[PROPOSED] CONSENT DECREE – Case No. C 07-04187 EDL

16